UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TARIK F.,[1]

                        Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

CIVIL ACTION NO.: 24 Civ. 10032 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.        INTRODUCTION

Plaintiff Tarik F. ("Plaintiff") commenced this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  (Dkt. No. 1 (the "Complaint")).

Plaintiff seeks review of the decision by the Commissioner (the "Commissioner") of the Social

Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB")

under the Act.  (Id.)  Plaintiff contends that the decision of the Administrative Law Judge ("ALJ")

dated October 18, 2024 (the "ALJ Decision") was erroneous, not supported by substantial

evidence, and contrary to law, and asks the Court to remand for a new hearing to reconsider the

evidence.  (Id.)

Pursuant to the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g)

(the "Supplemental Rules") and the Court's Standing Order No. 22-mc-329-LTS (the "Standing

---

[1] We identify Plaintiff by first name and last initial in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  See Joselyn M. v. Comm'r of Soc. Sec., No. 24 Civ. 8756 (GRJ), 2025 WL 3059761, at *1 n.1 (S.D.N.Y. Nov. 2, 2025).

Order"), the parties each submitted briefs setting forth the requested relief. (Dkt. Nos. 13 ("Plaintiff's Brief"); 15 (the "Commissioner's Brief")).[2] For the reasons set forth below, the ALJ Decision is **AFFIRMED** and this action is **DISMISSED**. Final judgment shall be entered in favor of the Commissioner.

## II.    BACKGROUND

### A.  Administrative Proceedings

In July 2020, Plaintiff, who was born in 1988 and has a high school education, applied for benefits, alleging a disability onset date of February 27, 2019, when, while working as a security guard at Hunter College, he was reportedly struck in the head during an altercation with a co-worker and lost consciousness (the "Incident"). (R. 201–207, 303, 313, 318).[3] He claimed disability due to pain in his back, left leg, left arm, left shoulder, neck and head, and nerve damage. (R. 218). On October 5, 2020, Plaintiff's application was denied initially, and on March 12, 2021, was denied on reconsideration. (R. 15, 75–93, 113–23). He then requested a hearing before an ALJ. (R. 15, 125–28).

### 1.  ALJ Hearings

#### a.  The First Hearing

On August 16, 2021, ALJ Sharda Singh ("ALJ Singh") held a telephonic hearing at which Plaintiff, represented by counsel, appeared and testified. (R. 15, 52–74). An impartial vocational expert also appeared and testified. (R. 15, 67–73). On December 27, 2021, ALJ Singh issued a

---

[2] Plaintiff's Brief was incorrectly styled as a motion for judgment on the pleadings, which is inconsistent with the Supplemental Rules and Standing Order mentioned above. Accordingly, we have construed his submission as his Brief rather than a motion.

[3] Citations to "R." refer to the Certified Administrative Record. (Dkt. No. 9).

decision finding Plaintiff not disabled under the Act. (R. 15–31). After the Appeals Council denied his request for review, on May 15, 2023, Plaintiff commenced an action in this Court seeking review of ALJ Singh's decision. See Tarik F. v. Comm'r of Soc. Sec., No. 23 Civ. 4030 (S.D.N.Y.). (R. 1364–66). On December 7, 2023, on the parties' agreement, the Honorable Sarah Netburn issued a stipulation and order remanding Plaintiff's case to the Commissioner pursuant to § 405(g) of the Act for further proceedings. (R. 1376–78).

On January 10, 2024, the Appeals Council remanded Plaintiff's case to the Commissioner for further proceedings, with instructions to, inter alia: (i) obtain additional evidence concerning Plaintiff's impairments, in particular the headache and shoulder impairments; (ii) consider whether Plaintiff has a medically determinable primary headache disorder; (iii) give further consideration to the medical source opinions pursuant to 20 C.F.R. § 404.1520c; (iv) give further consideration to Plaintiff's maximum residual functional capacity and provide an appropriate rationale with specific references to record evidence of the assessed limitations; and (v) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (R. 1398–99; see R. 1265).[4]

### b. The Second Hearing

On June 26, 2024, ALJ Michael J. Stacchini ("ALJ Stacchini") held a telephonic hearing in which Plaintiff, represented by counsel, appeared and testified (the "Second Hearing"). (R. 1265, 1293–1337). ALJ Stacchini also received testimony from a vocational expert, Joseph Atkinson (the "VE"), whom Plaintiff's attorney also questioned. (R. 1326–36).

---

[4] The Appeals Council also ordered the ALJ to consolidate a second application for DIB Plaintiff had submitted on July 19, 2023 as duplicative of the first application. (R. 1399, 1561–70).

### 2. **The ALJ Decision**

On October 18, 2024, ALJ Stacchini issued a decision denying Plaintiff's application for benefits. (R. 1265–83). The ALJ first found that Plaintiff had not engaged in substantial gainful activity since February 27, 2019 (the "Onset Date"). (R. 1268). At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical disc bulging with discopathy and spinal canal encroachment[;] lumbosacral disc herniation with radiculopathy[;] left shoulder impingement with bursitis, synovitis, adhesive capsulitis, labral tear, and rotator cuff tear[;] left hip bursitis[;] a headache disorder[;] and obesity[.]" (R. 1268). The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (R. 1270). Specifically, the ALJ found that Plaintiff's back, shoulder, hip, and leg impairments did not meet Listings 1.15, 1.16, and 1.18, and that neither his obesity nor his headache disorder medically equaled a Listing. (R. 1270–72).

The ALJ then determined that Plaintiff had the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift and carry 20 pounds frequently and 10 pounds occasionally; sit 6 hours and stand/walk 2 hours in an 8 hour day with regular breaks of 15 minutes in morning and afternoon and half hour to hour midday; permitted to shift from sitting or standing position after one hour permitting to be off task up to 5 percent of work period; occasionally climb ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, or crouch; no crawling; frequently reaching, but occasionally reaching overhead; frequently hand[l]ing and fingering; avoiding extreme cold, heat, and humidity; and avoid unprotected heights and hazardous machinery.

(R. 1272 (the "RFC")). After considering Plaintiff's age (30, making him a younger individual), education, work experience, and RFC, the ALJ found that jobs existed in sufficient numbers in the national economy that he can perform. (R. 1282). Those jobs included: (i) document preparer

4

(Dictionary of Occupational Titles ("DOT") code 249.587-018), of which there are 14,440 jobs in the national economy; (ii) charge account clerk (DOT 205.367-014), of which there are 1,033 jobs in the national economy; and (iii) polisher (DOT 713.684-038), of which there are 1,157 jobs in the national economy.  (R. 1282–83).

Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Act from the Onset Date through the date of the ALJ Decision.  (R. 1283).  After the Appeals Council declined to review the ALJ Decision, the ALJ Decision became the final decision of the Commissioner.  20 C.F.R. § 416.1484(a).

### B.  Procedural History

On December 31, 2024, Plaintiff, through counsel, filed the Complaint commencing this action.  (Dkt. No. 1).  The parties thereafter consented to Magistrate Judge jurisdiction for all purposes.  (Dkt. No. 8).  On June 20, 2025, Plaintiff filed his brief, and on August 28, 2025, the Commissioner filed his brief.  (Dkt. Nos. 13; 15).  Plaintiff has not filed a reply.

### III.    DISCUSSION

### A.  Applicable Legal Standards

#### 1.  Standard of Review

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  "It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).[5]  A court may only set aside the Commissioner's decision denying DIB

---

[5] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).

Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. See Tejada, 167 F.3d at 773; Calvello, 2008 WL 4452359, at *8. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).

The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts. See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). The Commissioner, not the Court, resolves evidentiary conflicts and appraises

the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–509 (2d Cir. 2009).  To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from his medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  See 20 C.F.R. §§ 404.1520b, 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly

appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. See Pratts, 94 F.3d at 39. If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate. See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. § 404.1560(c)(2), as recognized in Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order)).

## 2. Standards for benefit eligibility

For purposes of DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(3)(B). In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722–23 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof. See Bush, 94 F.3d at 45. At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform. See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. Assessing claimant's subjective allegations

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment — i.e., an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques — that could reasonably be expected to produce the claimant's pain or other symptoms. See 20 C.F.R. § 404.1529(c). If such an impairment is found, the ALJ

must next evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional capacity.  See 20 C.F.R. § 404.1529(c)(1).  To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.  See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts."  Sanchez v. Astrue, No. 07 Civ. 9318 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010).  "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)."  Id.  "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed" in 20 C.F.R. § 404.1529(c)(3).  Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).  If the ALJ does not follow these steps, remand is appropriate.  See Sanchez, 2010 WL 101501, at *15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  See SSR 96-7p, 1996 WL 374186, at *2 (superseded by SSR 16-3p for cases filed after March 27, 2017).  These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms;

10

(4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4.

### 4. Medical Opinion Evidence

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant.  See 20 C.F.R. § 416.927; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004) (summary order).  Under this "[T]reating [P]hysician [R]ule," an ALJ was required to "give good reasons[,]" Kevin E. v. Comm'r of Soc. Sec., No. 19 Civ. 593 (EAW), 528 F. Supp. 3d 104, 109 (W.D.N.Y. 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's opinion was not entitled to "controlling weight[,]" or, at least, "greater weight" than the opinions of non-treating and non-examining sources.  Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000); see 20 C.F.R. § 416.927(c)(2).  In addition, under the Treating Physician Rule, a consultative physician's opinion was generally entitled to "little weight."  Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 F.R. 5844-01, 2017 WL

168819 (Jan. 18, 2017).  These new regulations reflect a move away from a perceived hierarchy of medical sources.  See id.  The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and "evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency, (3) relationship of the source with the claimant, (4) the medical source's specialization, and (5) any "other" factor that "tend[s] to support or contradict a medical opinion[.]"  20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  See 20 C.F.R. § 404.1520c(a). Under the new regulations, the ALJ must "explain[,]" in all cases, "how [he or she] considered" both the supportability and consistency factors, as they are "[t]he most important factors[.]"  Id. § 404.1520c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors).  As to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."  Vellone ex rel. Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Vellone I") (citing 20 C.F.R. § 404.1520c(c)(1)), adopted by, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("Vellone II").  Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  Vellone I, 2021 WL 319354, at *6; see 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available" in the record).

As to the three remaining factors — relationship with the claimant, specialization, and "other" — the ALJ is required to consider them in determining the persuasiveness of the opinion of a medical source but need not explicitly discuss them.  See 20 C.F.R. § 404.1520c(b)(2).  If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors.  See id. § 404.1520c(b)(3).

### B.  Evaluation of the ALJ's Decision

Plaintiff's arguments in support of his request for reversal of the ALJ Decision fall into three categories:  (1) the ALJ relied on erroneous testimony from the VE, who failed to identify jobs that exist in significant numbers in the national economy (Dkt. No. 13 at 17–20); (2) the ALJ's RFC is not supported by substantial evidence (id. at 20–23); and (3) the ALJ improperly evaluated the medical opinion evidence of one of Plaintiff's treating physicians, Yvette Abraham, M.D. ("Dr. Abraham").  (Id. at 23–25).  We consider Plaintiff's arguments in reverse order, in better keeping with the five-step analysis set forth above.

#### 1.  ALJ's Evaluation of Dr. Abraham's Medical Opinion Evidence

Plaintiff disputes the ALJ's finding that Dr. Abraham's September 2020 opinion that Plaintiff "requires the use of a cane, needs to change positions frequently, and needs to take five- to ten-minute breaks every hour or hour and a half" was "less persuasive[.]"  (Dkt. No. 13 at 24; see R. 1279).  Plaintiff complains that, in evaluating Dr. Abraham's opinion, the ALJ failed to address the required supportability and consistency factors (see § III.A.4, supra) and substituted his own judgment for Dr. Abraham's opinion.  (Dkt. No. 13 at 24–25).  The Commissioner

13

responds that the ALJ "specifically discussed the lack of support for [Dr. Abraham's] opinions in [her] own treatment notes." (Dkt. No. 15 at 22).

Dr. Abraham, a pain management specialist, treated Plaintiff from 2019, right after the Incident, until 2021 for neck and back pain with numerous pain medications and muscle relaxers as well as lumbar epidural steroid injections and physical therapy. (R. 1274; see R. 921–1172). Dr. Abraham's treatment records consistently show that Plaintiff exhibited a normal gait and did not use a cane. (R. 944, 953, 962, 971, 980, 989, 998, 1007, 1016, 1025, 1034, 1043, 1052, 1061, 1070, 1079, 1088, 1097). Dr. Abraham's September 2020 report contains the first mention of Plaintiff's use of a cane, despite her notation that his gait remained normal and he could stand and walk up to six hours per day. (R. 688–89). Dr. Abraham's treatment records also reflect that, after the injections in July 2020, Plaintiff was able to stand and move more freely and felt improved function and that his November 2020 MRI on his left hip was normal. (R. 1066, 1072, 1143).

Notably, Plaintiff's argument ignores the ALJ's finding that Dr. Abraham's opinions about his abilities to lift, carry, push, and pull were "reasonably consistent with the relevant medical evidence[,]" such that the ALJ essentially incorporated those aspects of her opinion in the RFC. (Compare R. 1278, with R. 1272). The ALJ discussed Dr. Abraham's treatment records in detail in concluding that, while there was "some support," her opinion regarding sitting, standing, and breaks was "less persuasive" given her lack of observations of his use of a cane and her consistent observation of his normal gait. (R. 1278–79). Given the inconsistencies between Dr. Abraham's treatment records and those opinions, the ALJ applied the correct legal standard and appropriately assessed Dr. Abraham's opinions. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x

14

5, 7–8 (2d Cir. 2017) (summary order) (finding that ALJ properly assessed medical opinion for which there was substantial contradicting evidence); Serrano v. Comm'r of Soc. Sec., No. 22 Civ. 5627 (JPO) (SLC), 2023 WL 6049651, at *13–14 (S.D.N.Y. July 24, 2023) (finding that ALJ appropriately evaluated treating physicians' opinions that were not supported by treatment records and were inconsistent with other record evidence), adopted by, 2023 WL 6039337 (S.D.N.Y. Sept. 15, 2023).

### 2.  The ALJ's Determination of Plaintiff's RFC

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]"  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).  When determining a claimant's RFC, "an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole."  Maya I.D.F. v. Comm'r of Soc. Sec., No. 21 Civ. 3617 (GRJ), 2022 WL 4298729, at *3 (S.D.N.Y. Sept. 19, 2022); see 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [a claimant's] residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").  "The ALJ does not need to address every piece of evidence but must provide a glimpse into their reasoning."  Donald P. v. Comm'r of Soc. Sec., No. 22 Civ. 1022 (GLS) (DJS), 2023 WL 9284292, at *2 (N.D.N.Y. Dec. 20, 2023), adopted by, 2024 WL 166840 (N.D.N.Y. Jan. 16, 2024).

As noted above, the ALJ found that Plaintiff retained the RFC to perform sedentary work,[6] with the following limitations: he can lift and carry 20 pounds frequently and 10 pounds occasionally; he can sit 6 hours and stand/walk 2 hours in an 8 hour day with regular breaks of 15 minutes in the morning and afternoon and a half hour to an hour at midday; he be permitted to shift from a sitting or standing position after one hour and be permitted to be off task up to 5 percent of the work period; he can occasionally climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, or crouch; he cannot crawl; he can frequently reach but only occasionally reach overhead; he can frequently handle and finger; he must avoid extreme cold, heat, and humidity; and he must avoid unprotected heights and hazardous machinery.  (R. 1272).  This RFC was consistent with, if not slightly more limited than, the opinions of J. Serge Parisien, M.D. (R. 2533–34, 2546–47, 2671, 2682, 2797, 2808, 2820), which Plaintiff does not contest (see Dkt. No. 13), and which the ALJ found to be persuasive and supported by and consistent with the medical evidence and other medical opinions in the record. (R. 1280).

Plaintiff argues that the ALJ erred in assessing his RFC by failing to "include any meaningful limitations for headaches" and to explain why Plaintiff's "headaches (or his headache medications) had no impact on work in the RFC."  (Dkt. No. 13 at 22).  In support, Plaintiff cites the November 2023 opinion of consultative examiner Elizabeth Reynolds, M.D. ("Dr. Reynolds"), that he would "need schedule[d] interruptions for headaches."  (Id. (citing R. 3031–32)).  The

---

[6] The regulations define sedentary work as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

Commissioner responds that Plaintiff misstates the ALJ's RFC, which contemplates that Plaintiff will "be off task up to 5 percent" of the workday and thus accounted for the impact of his headaches. (Dkt. No. 15 at 19). The Commissioner also responds that the ALJ "thoroughly discussed why the evidence did not support additional limitations[,]" and notes that Plaintiff fails to point to any evidence documenting dizziness or drowsiness from his headache medications. (Id. at 19–20). The Commissioner thus contends that the ALJ's RFC determination "represents a reasonable resolution of conflicting evidence." (Id. at 21).

We agree with the Commissioner that the ALJ adequately accounted for the impact of Plaintiff's headaches and any medication side effects in the RFC by providing for 15-minute breaks in the morning and afternoon and contemplating that he would be off-task 5% of the workday. (R. 1272). The RFC thus includes "regular break periods" as well as the possibility of other "interruptions" during the workday if Plaintiff's headaches arose or he felt medication side effects. (R. 1280, 3032–33, 3044). Dr. Reynolds did not specify, let alone justify, longer or more frequent breaks in her opinion. (R. 1280, 3032–33, 3044). As the Commissioner correctly notes, greater restrictions were not supported by the record, which reflects that Plaintiff denied any history of chronic or recurrent headaches (R. 530, 1254, 1257, 1259, 1711, 2290, 2292, 2298, 2303, 2306, 2311, 2313), described them as mild or "less severe" when they did occur, (R. 2992, 3005), and did not have evidence of a "permanent impairment" to his head. (R. 2362). Furthermore, in September 2023, just two months earlier than Dr. Reynolds' assessment, Plaintiff made no headache complaints to consultative examiner Michael Healy, M.D., who did not indicate that any headache-related limitations were necessary. (R. 3038–39). To the extent that Plaintiff relies on Dr. Abraham's suggestion of five- to ten-minute breaks (Dkt. No. 13 at 22), her

suggestion related to standing, sitting, and walking, and she indicated no headache-related limitation. (R. 689). Given that the record does not reflect that his headaches were "severe or disabling," Plaintiff has not shown that any greater limitations for headaches were warranted. See Yucekus v. Comm'r of Soc. Sec., 829 F. App'x 553, 556 (2d Cir. 2020) (summary order) (finding that record did not support plaintiff's argument for more restrictive RFC). Finally, Plaintiff's subjective complaints about dizziness or other side effects of headache medication, which the medical opinions do not corroborate (R. 687–90, 2969–73, 3036–39, 3028–32), do not undermine the ALJ's RFC determination. See Mauro v. Comm'r of Soc. Sec. Admin., 746 F. App'x 83, 84 (2d Cir. 2019) (summary order) (explaining that plaintiff's subjective complaints alone were not a basis for finding her disabled "in the absence of corroborating objective medical evidence.").

### 3. The ALJ's Reliance on the VE's Testimony

Plaintiff argues that the VE's testimony did not constitute substantial evidence to support the ALJ's finding at step five that he could perform jobs that existed in significant numbers in the national economy because the document preparer position is obsolete and the other two positions that the ALJ referenced, charge account clerk and polisher, do not exist in significant numbers. (Dkt. No. 13 at 17–20). The Commissioner responds that the ALJ's hypothetical properly tracked the RFC determination and the VE's testimony that the document preparer position has evolved with technology sufficiently supported the ALJ's conclusion. (Dkt. No. 15 at 16–17). The Commissioner also notes that courts have rejected Plaintiff's argument that the charge account clerk position is obsolete, and, in any event, the combined document preparer and polisher positions exist in significant numbers in the national economy. (Id. at 18).

As noted above, at step five of the disability analysis, "the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy for Plaintiff to perform." Phelps v. Colvin, 20 F. Supp. 3d 392, 406 (W.D.N.Y. 2014) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)); see 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may use the Medical Vocational Guidelines, or "Grids," see 20 C.F.R. Part 404, Subpart P, Appendix 2, unless the claimant "has nonexertional impairments which significantly limit the range of work permitted by his exertional limitations[.]" Phelps, 20 F. Supp. 3d at 406. In that circumstance, "the Commissioner cannot rely upon the grids, and instead must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain or perform." Id. The ALJ may consult the VE for evidence as to the existence of jobs in the national economy that a hypothetical claimant with particular functional limitations could perform. See 20 C.F.R. § 404.1566(e). An ALJ may properly rely on the VE's responses to a hypothetical about a claimant's capabilities, provided that the hypothetical is supported by substantial record evidence. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinions and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved[.]"); accord Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983).

Neither the Act nor the regulations quantify what constitutes a "significant number" of positions in the national economy, "[n]or has the Second Circuit set any bright line rule regarding the number of jobs needed to satisfy the Commissioner's burden at step five." Maldonado v.

19

Comm'r of Soc. Sec., No. 21 Civ. 7594 (RWL), 2023 WL 243617, at *10 (S.D.N.Y. Jan. 18, 2023).

Courts within the Second Circuit "have generally found that what constitutes a 'significant'

number is fairly minimal[,]" Fox v. Comm'r of Soc. Sec., No. 02 Civ. 1160 (FJS) (RFT), 2009 WL

367628, at *20 (N.D.N.Y. Feb. 13, 2009) (collecting cases), including deeming "nationwide

numbers upwards of 9,000 jobs sufficient to meet the significant number requirement."

Maldonado, 2023 WL 243617, at *10 (collecting cases holding around 9,000 nationwide positions

sufficient to satisfy step five burden).

Here, the VE, who has a bachelor's and a master's degree in rehabilitation and was a

vocational rehabilitation consultant for nearly 20 years and has testified as a VE for nearly ten

years, testified at the Second Hearing.  (R. 1327–35, 1632–33).  In response to the ALJ's first

hypothetical, describing a person capable of performing a full range of light work but limited to

occasional climbing ramps or stairs, no climbing ladders, ropes, or scaffolds, with occasional

balancing, stooping, kneeling, or crouching but no crawling, with frequent reaching, handling,

and fingering, but no exposure to extreme temperatures or humidity and no unprotected heights

or hazardous machinery, the VE testified that such a person could perform the positions of

housekeeping cleaner, router, and cashier.  (R. 1327).  In the second hypothetical, the ALJ added

the limitations of lifting 20 pounds occasionally and ten pounds frequently, standing and walking

for two hours per workday, and sitting up to six hours per workday.  (R. 1327–28).  The VE

testified that such a person would be limited to sedentary work but could perform the positions

of document preparer (14,440 positions), charge account clerk (1,033 positions), and polisher

(1,157 positions).  (R. 1328).  The VE also confirmed that an individual limited to occasional or no

overhead reaching would still be able to perform these positions, as would an individual who

alternated between standing and sitting at one-hour intervals, provided they were not off-task

more than 5% of the workday, could perform these positions.  (R. 1328–29).

In addition, the VE testified that:

the document preparer [position] is currently performed different [sic] than indicated in the DOT due to updated technology from when the DOT was last updated many years ago.  So now it would — they're primarily preparing documents and scanning them for viewing on a website, whereas the DOT refers to preparing documents for viewing on microfilm or microfiche.

(R. 1328).  The VE testified that while he had not seen document preparer work done with

microfiche, it was his "understanding" that "some industries . . . still use microfiche," although

he did not provide "the exact numbers of jobs [that] do microfiche versus others."  (R. 1334).

Despite the changes in technology, however, the VE confirmed that the number of positions in

the national economy were current and derived from SkillTRAN and Job Browser Pro.  (R. 1332).

Plaintiff's attorney raised the fact that the Social Security Administration had imposed additional

evidence requirements for certain DOT positions such as the document preparer position that

some courts had deemed obsolete,[7] and the VE responded that it was his understanding from

literature and his experience that both microfiche and scanning to websites were methods of

performing the document preparer position.  (R. 1335).  The ALJ noted that the VE "testified that

it's done both ways[,]" and that "[t]he more important thing is that it still fits the hypothetical,

and the job still exists."  (R. 1334).

---

[7] On January 6, 2025, the Social Security Administration issued an Emergency Message that established heightened evidentiary and articulation requirements for certain DOT job titles, including document preparer, "whose continued widespread existence multiple courts have questioned." https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited February 10, 2026) (the "Emergency Message").

While we recognize those courts that have described the document preparer position as obsolete,[8] we nevertheless find that substantial evidence supports the ALJ's determination that the Commissioner satisfied the burden at step five to show that a significant number of positions existed in the national economy that Plaintiff could perform.  First, Plaintiff's criticism of the ALJ's supposed "'unblinking acceptance of conclusory opinions by vocational expert testimony'" (Dkt. No. 13 at 18 (quoting Zacharopoulos, 516 F. Supp. 3d at 225), is misplaced.  After Plaintiff's counsel raised concerns, based on the Emergency Message, about the obsolescence of the document preparer position, the ALJ questioned the VE to reconfirm that, by whatever method the document preparer position was performed, the position was not obsolete and the number of positions was current.  (R. 1332–34).  The ALJ's confirmation that the VE had considered changes in technology in opining on the number of document preparer positions thus distinguishes the VE here from the expert in Melanie V., whom the court criticized for failing to "acknowledg[e] any changes in technology related to that occupation."  2024 WL 3337924, at *5; see Oswaldo N. v. Comm'r of Soc. Sec., No. 24 Civ. 7970 (GRJ), 2025 WL 2062702, at *9 (S.D.N.Y. July 23, 2025) (finding that ALJ properly found significant number of document preparer positions where VE testified that position "was 'done in a more modern format now[.]'").

---

[8] See Denise W. v. Comm'r of Soc. Sec., No. 23 Civ. 1098S, 2025 WL 322249, at *7 n.4 (W.D.N.Y. Jan. 29, 2025) (noting that document preparer was a "questionable" occupation that "may be obsolete [] or no longer exist in significant numbers"); Melanie V. v. Comm'r of Soc. Sec., No. 23 Civ. 973S, 2024 WL 3337924, at *5 (W.D.N.Y. July 9, 2024) (criticizing VE for failing to provide explanation adjusting number of document preparer positions "due to obsolescence"); Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 224 (E.D.N.Y. 2021) (finding that "microfilm document preparer position" was "plainly obsolete" but holding that ALJ's finding that plaintiff was not disabled because she could perform her past relevant work was supported by substantial evidence).

Second, the VE testified that, in addition to his experience and the literature, he relied on the SkillTRAN database and JobBrowser Pro software as sources for determining the number of positions in the national economy. (R. 1332). While a VE's "testimony may count as substantial evidence even when unaccompanied by supporting data[,]" Biestek v. Berryhill, 587 U.S. 97, 105 (2019), courts have deemed SkillTRAN and JobBrowser Pro as sources that provide reliable and sufficient evidence to support a VE's opinion about the number of jobs available in the national economy. See Herrera v. Comm'r of Soc. Sec., No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *8 (S.D.N.Y. Oct. 21, 2021) (finding that VE's testimony about number of jobs based on SkillTRAN database constituted substantial evidence on which ALJ could rely); Dennison v. Berryhill, No. 17 Civ. 1059F, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) (same); Diaz v. Berryhilll, No. 17 Civ. 735 (JCH), 2018 WL 4462366, at *9 (D. Conn. Sept. 18, 2018) (same); Frazier v. Comm'r of Soc. Sec., No. 16 Civ. 4320 (AJP), 2017 WL 1422465, at *19 (S.D.N.Y. Apr. 21, 2017) (same).

Third, neither of the other positions that the VE identified — credit account clerk and polisher — are among the potentially obsolete occupations mentioned in the Emergency Message and thus also support the Commissioner's burden at step five. See Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order) ("The Commissioner need show only one job existing in the national economy that [the plaintiff] can perform.") (citing 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566(b)); Oswaldo N., 2025 WL 2062702, at *9 (finding that "even if the position of document preparer is considered obsolete, the ALJ's step five analysis [was] sufficiently supported by the other two positions identified by the vocational expert[.]").

Accordingly, we conclude that the ALJ satisfied the heightened duty of inquiry regarding the document preparer position as the Emergency Message required, and that substantial

23

evidence supports the ALJ's determination at step five that Plaintiff can perform work that exists in significant numbers in the national economy.

IV.    **CONCLUSION**

For the reasons set forth above, the ALJ Decision is **AFFIRMED** and this action is **DISMISSED**.  The Clerk of the Court is respectfully directed to enter final judgment in favor of the Commissioner and close this action.

Dated:        New York, New York
              February 11, 2026

                              SO ORDERED.

                              _____
                              SARAH L. CAVE
                              United States Magistrate Judge